## 22-2075

# United States Court of Appeals
### for the
# Fourth Circuit

ANGELA SINGLETON,

*Plaintiff/Appellant,*

– v. –

MARYLAND TECHNOLOGY AND
DEVELOPMENT CORPORATION,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# BRIEF OF APPELLANT

PHILIP B. ZIPIN
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue
Suite 400
Silver Spring, Maryland  20910
(301) 587-9373

*Counsel for Appellant*

 COUNSEL PRESS ● VA – (804) 648-3664

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. <u>22-2075</u>        Caption: <u>Singleton v. Maryland Technology and Development Corporation</u>

Pursuant to FRAP 26.1 and Local Rule 26.1,

<u>Angela Singleton</u>
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Denise M. Clark _____     Date: ____11/3/2022____

Counsel for: Angela Singleton _____

- 2 -

[Print to PDF for Filing]

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. ii

I.     Jurisdictional Statement .......................................................1

II.    Statement of Issues .............................................................2

III.   Statement of Case ...............................................................2

IV.    Summary of Argument .........................................................3

V.     Standard of Review .............................................................5

VI.    Argument ..........................................................................5

      a.    Eleventh Amendment Immunity and the *Ram Ditta* Factors
          Generally ....................................................................5

      b.    District Court Analysis of TEDCO ....................................11

      c.    Application of *Ram Ditta* to TEDCO................................13

          (i)    The First *Ram Ditta* Factor Does Not Support "Arm-
               of-the-state" Status ................................................13

               1.    Functional Liability and the Structure of TEDCO .........14

               2.    Judgment Against TEDCO Will Not Affect The
                    State Treasury .............................................15

          (ii)   The Second *Ram Ditta* Factor Does Not Support "Arm-
               of-the-state" Status ................................................19

          (iii)  The Third *Ram Ditta* Factor Supports "Arm-of-the-
               state" Status ..........................................................25

          (iv)   The Fourth *Ram Ditta* Factor Does Not Support "Arm-
               of-the-state" Status ................................................25

      d.    The *Ram Ditta* Factors, As Reviewed, Do Not Support "Arm-
          of-the-state" Status ......................................................27

VII.   Conclusion ......................................................................28

VIII.  Request for Oral Argument .................................................28

## TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Alden v. Maine*,
527 U.S. 706 (1999)................................................................6

*Cash v. Granville County Bd. of Educ.*,
242 F.3d 219 (4th Cir. 2014)............................................ 6, 7, 8, 9

*Fed. Maritime Comm'n v. S.C. State Ports Auth.*,
535 U.S. 743 (2002)................................................................8

*Glover v. City of Norfolk*,
836 Fed. Appx. 139 (4th Cir. 2020) .......................................9

*Hess v. Port Auth. Trans-Hudson Corp.*,
513 U.S. 30 (1994)............................................................ 14, 23

*Hutto v. S.C. Ret. Sys.*,
773 F.3d 536 (4th Cir.) .................................................. *passim*

*Kuntze v. Josh Enters.*,
365 F. Supp. 3d 630 (E.D. Va. 2019) ....................................5

*Md. Stadium Auth. v. Ellerbe Becket, Inc.*,
407 F.3d 255 (4th Cir. 2005)........................................ 10, 24, 26

*Murphy v. Virginia*,
2022 U.S. App. LEXIS 33667 (4th Cir. 2022) ........................5

*Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*,
822 F.2d 456 (4th Cir. 1987)......................................... 6, 7, 8, 28

*Regents of the Univ. of Cal. v. Doe*,
519 U.S. 425 (1997)..............................................................27

*Stone v. Instrumentation Lab. Co.*,
591 F.3d 239 (4th Cir. 2009)..................................................5

*United States ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp.*,
681 F.3d 575 (4th Cir. 2012).................................................6, 7

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
745 F.3d 131 (4th Cir. 2014)......................................... *passim*

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
  804 F.3d 646 (4th Cir. 2015).......................................................................... *passim*

**Statutes & Other Authorities:**

U.S. Const. amend. XI ................................................................................. *passim*

28 U.S.C. § 1291 ....................................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

28 U.S.C. § 1367 ....................................................................................................1

28 U.S.C. § 1391 ....................................................................................................1

42 U.S.C. § 1981 ....................................................................................................1

COMAR 01.01.2020.05 .......................................................................................26

COMAR 14.04.01.01 ...........................................................................................26

COMAR 14.04.01.02 ...........................................................................................22

COMAR 14.04.01.03 ...........................................................................................22

COMAR 14.04.01.04 ...........................................................................................22

COMAR 14.04.01.05 ...........................................................................................22

COMAR 14.04.01.06 ...........................................................................................22

Fed. R. App. P. 4(a)(1)(A) .....................................................................................1

Fed. R. Civ. P. 12(b)(1) ................................................................................ 1, 2, 5

Fed. R. Civ. P. 12(b)(6) .........................................................................................2

Md. Code Ann., Cts. & Jud. Proc. § 6-102 ...........................................................1

Md. Code Ann., Econ. Dev. § 10-401 .................................................................26

Md. Code Ann., Econ. Dev. § 10-402 .................................................................12

Md. Code Ann., Econ. Dev. § 10-403 .................................................................20

Md. Code Ann., Econ. Dev. § 10-403(b) .............................................................12

Md. Code Ann., Econ. Dev. § 10-403(b)(1) .........................................................20

Md. Code Ann., Econ. Dev. § 10-403(b)(2) .........................................................12

Md. Code Ann., Econ. Dev. § 10-403(b)(3) ...........................................................12

Md. Code Ann., Econ. Dev. § 10-403(e)(2) ...........................................................12

Md. Code Ann., Econ. Dev. § 10-403(h)(2) ....................................................12, 23

Md. Code Ann., Econ. Dev. § 10-404 ....................................................................20

Md. Code Ann., Econ. Dev. § 10-405 ....................................................................24

Md. Code Ann., Econ. Dev. § 10-405(b)(1) ..........................................................12

Md. Code Ann., Econ. Dev. § 10-405(c) ................................................................24

Md. Code Ann., Econ. Dev. § 10-406 ....................................................................20

Md. Code Ann., Econ. Dev. § 10-407 ..............................................................21, 27

Md. Code Ann., Econ. Dev. § 10-408 ..............................................................11, 12

Md. Code Ann., Econ. Dev. § 10-408(a) ...............................................................22

Md. Code Ann., Econ. Dev. § 10-408(b) ...............................................................23

Md. Code Ann., Econ. Dev. § 10-408(b)(11) .........................................................23

Md. Code Ann., Econ. Dev. § 10-409(b) ...............................................................22

Md. Code Ann., Econ. Dev. § 10-414 ....................................................................11

Md. Code Ann., Econ. Dev. § 10-415 ....................................................................11

Md. Code Ann., Econ. Dev. § 10-434 ....................................................................14

Md. Code Ann., Econ. Dev. § 10-434(c) ................................................................15

Md. Code Ann., Econ. Dev. § 10-434(d)(2) ..........................................................15

Md. Code Ann., Econ. Dev. § 10-434(f) ................................................................21

Md. Code Ann., Econ. Dev. § 10-434(g)(2) ..........................................................15

Md. Code Ann., Econ. Dev. § 10-448 ....................................................................14

Md. Code Ann., Econ. Dev. § 10-448(b)(2) ..........................................................15

Md. Code Ann., Econ. Dev. § 10-448(d) ...............................................................15

Md. Code Ann., Econ. Dev. § 10-448(e) ................................................................21

Md. Code Ann., Econ. Dev. § 10-448(f)(2) ...........................................................15

Md. Code Ann., Econ. Dev. § 10-457 ....................................................................14

Md. Code Ann., Econ. Dev. § 10-457(c) ...................................................15

Md. Code Ann., Econ. Dev. § 10-457(e) ...................................................21

Md. Code Ann., Econ. Dev. § 10-457(f)(2) ..............................................14

Md. Code Ann., Econ. Dev. § 10-457(f)(4) ..............................................15

Md. Code Ann., Econ. Dev. § 10-464 ......................................................14

Md. Code Ann., Econ. Dev. § 10-464(c) ...................................................15

Md. Code Ann., Econ. Dev. § 10-464(e) ...................................................21

Md. Code Ann., Econ. Dev. § 10-464(f)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-464(f)(4) ..............................................15

Md. Code Ann., Econ. Dev. § 10-469 ......................................................14

Md. Code Ann., Econ. Dev. § 10-469(b)(6) ....................................16, 21, 28

Md. Code Ann., Econ. Dev. § 10-469(c) ...................................................15

Md. Code Ann., Econ. Dev. § 10-469(d)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-469(f)(2) ..........................................15, 16

Md. Code Ann., Econ. Dev. § 10-482 ......................................................14

Md. Code Ann., Econ. Dev. § 10-482(c) ...................................................15

Md. Code Ann., Econ. Dev. § 10-482(d)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-482(f) ...................................................21

Md. Code Ann., Econ. Dev. § 10-482(g)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-486 ......................................................14

Md. Code Ann., Econ. Dev. § 10-486(c) ...................................................21

Md. Code Ann., Econ. Dev. § 10-486(d) ...................................................15

Md. Code Ann., Econ. Dev. § 10-486(e)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-486(g)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-487 ......................................................14

Md. Code Ann., Econ. Dev. § 10-487(d) ...................................................15

Md. Code Ann., Econ. Dev. § 10-487(e)(2) ..............................................15

Md. Code Ann., Econ. Dev. § 10-487(g)....................................................21

Md. Code Ann., Econ. Dev. § 10-488 ......................................................14

Md. Code Ann., Econ. Dev. § 10-488(b)(2) .............................................21

Md. Code Ann., Econ. Dev. § 10-488(b)(3) .............................................15

Md. Code Ann., Econ. Dev. § 10-488(b)(4)(ii) ........................................14

Md. Code Ann., Econ. Dev. § 10-488(b)(6) .............................................21

Md. Code Ann., Econ. Dev. § 10-4C-05 ..................................................14

Md. Code Ann., Econ. Dev. § 10-4C-05(b)(2) .........................................14

Md. Code Ann., Econ. Dev. § 10-4C-05(d) ..............................................15

Md. Code Ann., Econ. Dev. § 10-4C-05(e) ..............................................21

Md. Code Ann., Econ. Dev. § 10-4C-05(g)(2) ..........................................15

## I.  Jurisdictional Statement

On April 22, 2022, Appellant Angela Singleton ("Ms. Singleton") brought this action against the Maryland Technology and Development Corporation ("TEDCO") alleging violations of 42 U.S.C. § 1981, the Maryland Fair Employment Practices Act ("MFEPA"), and defamation in the United States District Court for the District of Maryland ("District Court"). *See generally*, JA16 – 22. Subject matter jurisdiction of the District Court was invoked pursuant to 28 U.S.C. §§ 1331 and 1367. *See* JA5. Venue of the District Court was proper pursuant to 28 U.S.C. § 1391. *Id.* Personal jurisdiction was invoked pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-102. *Id.* TEDCO was duly served with process in this action.

On September 8, 2022, after motions practice, Magistrate Judge J. Mark Coulson issued a Memorandum Opinion and Order dismissing Ms. Singleton's complaint pursuant to Fed. R. Civ. P. 12(b)(1) on Eleventh Amendment immunity grounds. *See* JA53. On October 8, 2022, Ms. Singleton timely filed her Notice of Appeal pursuant to Fed. R. App. P. 4(a)(1)(A). *See* JA54.

As such, pursuant to 28 U.S.C. § 1291, this appeal is properly before the United States Court of Appeals for the Fourth Circuit, as the appeal arises from a final order of the District Court disposing of all claims with respect to the parties.

## II.    Statement of Issues

1.    Is the Maryland Technology Development Corporation a state agency or instrumentality subject to sovereign immunity under the Eleventh Amendment?

## III.    Statement of Case

Due to the narrow issues of this case, the fact that no discovery had been conducted, the relevant facts for this matter are only the procedural history and the make-up of Ms. Singleton's claims. Ms. Singleton filed her Complaint against TEDCO alleging discrimination against herself and others on the basis of race and gender. *See* JA4. Further, Ms. Singleton alleged that she had been defamed by various executives at TEDCO related to her performance with the entity. *See* JA19 – 22. The discrimination and retaliation levied against Ms. Singleton eventually escalated to a retaliatory termination. *See* JA15 – 16.

After the filing of the complaint and completion of effective service of process, on June 8, 2022, TEDCO filed a Motion to Dismiss for Lack of Jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6). *See* JA30. After motions practice on the issues, on September 8, 2022, Ms. Singleton's complaint was dismissed pursuant to Fed. R. Civ. P. 12(b)(1) due to Eleventh Amendment issues which the District Court determined were evident through its analysis of applicable common law factors. For the reasons set forth below, those proffered reasons were faulty, in error, and the findings of the

2

District Court are due to be reversed and this matter remanded for further hearings as necessary.

## IV.    Summary of Argument

The District Court erred in its analysis of TEDCO as an "arm-of-the-state" entitled to Eleventh Amendment immunity. The review conducted herein of the *Ram Ditta* factors which govern the analysis of Eleventh Amendment immunity for state-created entities shows that the District Court failed to analyze key statutory provisions and accurately use common law standards and tests as well as granted greater weight to certain evidence than should have been granted.

In review of the first *Ram Ditta* factor testing the legal and functional liability of the state, the District Court found no legal liability, but determined that the State of Maryland would be functionally liable for a judgment against TEDCO. This determination was made despite TEDCO's vast reserves of substantial moneys to pay any judgment levied against it. Further, the District Court reasoned that the absence of the ability to acquire insurance was indicative of "arm-of-the-state" status which, as described further herein, is not a factor traditionally evaluated under *Ram Ditta* and further is irrelevant in the fact of TEDCO's substantial moneys.

In review of the second *Ram Ditta* factor testing the state-created entity's autonomy from the state, the District Court reasoned that this factor weighed in favor of "arm-of-the-state" status. The District Court's analysis was restricted to very few

3

traditionally recognized indicia and accorded greater weight to indicia which would properly be characterized as "minor strings" of state control, such as the Governor's ability to remove appointed members of the Board of Directors for sufficient cause.

Ms. Singleton agrees with the District Court that the third *Ram Ditta* factor which tests whether the state-created entity is concerned with statewide as opposed to non-state or local concerns weighs in favor of finding "arm-of-the-state" status.

In review of the fourth *Ram Ditta* factor testing how the state-created entity is treated by the state itself, the District Court found that this factor supported "arm-of-the-state" status but only slightly. In making this finding, the District Court accorded greater weight than was required or necessary in light of relevant case law on the sole item reviewed; that being the effect of language in the establishing statute of TEDCO declaring it a "state instrumentality". Further, the District Court failed to analyze any other statutory or regulatory provision to assist in its analysis of TEDCO's treatment under state law.

In total review, the *Ram Ditta* factors, properly considered upon this record, predominantly show that TEDCO is not an "arm-of-the-state" for purposes of the Eleventh Amendment. As such, judgment in this matter should be reversed and this matter should be remanded to the District Court for further hearings as necessary.

V.     **Standard of Review**

Dismissals of a lawsuit by a federal district court pursuant to Fed. R. Civ. P. 12(b)(1) are reviewed *de novo*. *See Murphy v. Virginia*, 2022 U.S. App. LEXIS 33667, 2 (4th Cir. 2022). *De novo* review entails consideration of an issue as if it had not been decided previously. *Stone v. Instrumentation Lab. Co.*, 591 F.3d 239, 246 (4th Cir. 2009). Here, the District Court dismissed Ms. Singleton's lawsuit pursuant to a factual challenge to the basis for subject matter jurisdiction. *See* JA34. Where the jurisdictional facts are not intertwined with the merits, the trial court may weigh evidence and resolve factual disputes to determine jurisdiction. *See Kuntze v. Josh Enters.*, 365 F. Supp. 3d 630, 636 (E.D. Va. 2019) (collecting cases). The jurisdictional facts are not intertwined when they are wholly unrelated to the basis for liability. *Id.* at fn. 3. Here, Ms. Singleton asserts that the jurisdictional facts are not intertwined with the facts related to merit.

Thus, in this case, the District Court's judgment may be affirmed only if that judgment is correct in its application of law and resolution of factual disputes.

VI.    **Argument**

a.     **Eleventh Amendment Immunity and the *Ram Ditta* Factors Generally**

Since its ratification, the Eleventh Amendment has been the codified embodiment of sovereign immunity for the many States of the United States. *See*

*Alden v. Maine*, 527 U.S. 706, 728-729 (1999) ("The Eleventh Amendment confirmed, rather than established, sovereign immunity as a constitutional principle."). This Court has identified that the Eleventh Amendment was passed for twin reasons: (1) the States' fears that federal courts would force them to pay their Revolutionary War debts, leading to their financial ruin and (2) the integrity retained by each State in our federal system, including the States' sovereign immunity from suit. *See Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223 (4th Cir. 2014). When the occasion arises to determine whether or not a particular state entity enjoys sovereign immunity, there is no bright line demarcation, and a determination must be made by reviewing the factual and legal basis for sovereign immunity. *See id.* The factual and legal basis is not simply reviewed without guidance, this Court has provided four (4) factors to review to assist courts in deciding the sovereign immunity status of an entity. They are:

(i)     Whether any judgment against the entity as defendant will be paid by the State;

(ii)    The degree of autonomy exercised by the entity;

(iii)   Whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and

(iv)    How the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the state.

*See Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456, 457-459 (4th Cir. 1987); *see also United States ex rel. Oberg v. Ky. Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012) ("*Oberg I*"). Notwithstanding these

factors, "the[] twin reasons [of the Eleventh Amendment] must 'dominate' any analysis of whether a governmental entity is to be accorded Eleventh Amendment immunity." *Cash*, 242 F.3d at 223.

These non-exclusive factors, known colloquially as the *Ram Ditta* factors, are guiding principles for courts attempting to determine whether an entity is a mere political subdivision of a state analogous to a municipality or if that entity is truly an "arm-of-the-state" entitled to sovereign immunity. *See Oberg I*, 681 F.3d at 580. The first *Ram Ditta* factor is derived from the first twin reason of the Eleventh Amendment, that being the protection of the state treasury, and the latter *Ram Ditta* factors are derived from the second twin reason of the Eleventh Amendment, that being the protection of the sovereignty and dignity of the states. *See Cash*, 242 F.3d at 224.

The analysis for sovereign immunity begins with the first factor which analyzes the effect of a judgment against the entity on the state treasury. *See Oberg I*, 681 F.3d at 580. This has been called the most important consideration in the sovereign immunity analysis. *See Hutto v. S.C. Ret. Sys.*, 773 F.3d 536, 543 (4th Cir.) (quoting *Ram Ditta*, 822 F.2d at 457); *see also Cash*, 242 F.3d at 223 ("The principal factor, upon which courts have virtually always relied, is whether a judgment against the governmental entity would have to be paid from the State's treasury."). This first factor's importance is compounded because it is potentially dispositive as a finding

that the state treasury will be affected by a judgment traditionally serves to halt further analysis and find that the entity enjoys sovereign immunity. *See Cash*, 242 F.3d at 223. The importance of the first factor is tempered by the other twin reason for the Eleventh Amendment, the purpose of according the states the respect owed to them as joint sovereigns. *See Hutto*, 773 F.3d at 543 (quoting *Fed. Maritime Comm'n v. S.C. State Ports Auth.*, 535 U.S. 743, 765 (2002)).

The first factor can be broken further down into two (2) pieces: whether the state will be legally liable or functionally liable. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646, 650 (4th Cir. 2015) ("*Oberg III*") ("Although the focus of the first factor is whether the 'primary legal liability' for a judgment will fall on the state, the practical effect on the state treasury of a judgment against the entity must also be considered."). Legal liability is clear where the entity sued is the state itself or is the real party in interest to such a degree that the entity is a mere *alter ego*. *See Ram Ditta*, 822 F.2d at 457 ("A particular entity may be entitled to immunity…if…the state is the real party in interest….[t]o be the real party in interest, the state need not be named as a defendant. It is only necessary that the named party be the *alter ego* of the state."). Functional liability is determined from the practical effect the judgment will have on the state treasury itself. *See Oberg III*, 804 F.3d at 650 ("Where an agency is so structured that, as a practical matter, if the agency is to survive, a judgment must expend itself against state treasuries.") An

entity may still enjoy sovereign immunity even if the state is not legally liable for paying the judgment but is functionally liable for payment. *See Hutto*, 773 F.3d at 543 ("A State treasury is responsible where the state is functionally liable, even if not legally liable."). Importantly, where there is an effect on the state treasury that is too indirect and ancillary, the entity will not be afforded the protection of sovereign immunity. *See Cash*, 242 F.3d at 225; *see also Glover v. City of Norfolk*, 836 Fed. Appx. 139, 141 (4th Cir. 2020). Finally, if the state treasury will be called upon to pay a judgment against a governmental entity, the entity is an arm of its creating state, and consideration of any other factor becomes unnecessary. *See Oberg III*, 804 F.3d at 650 (quoting *Cash*, 242 F.3d at 223).

The second *Ram Ditta* factor measures the degree of autonomy exercised by the entity. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 139 (4th Cir. 2014) ("*Oberg II*"). The cases measuring this factor have accounted for a number of different factual and legal considerations, including: (1) who appoints the entity's directors or officers[1]; (2) who funds the entity[2]; (3) who controls the entity's revenue[3]; (4) whether the state retains a veto over the entity's actions[4]; (5) whether the entity has corporate powers, such as the ability to contract,

---

[1] *See Hutto*, 773 F.3d at 546.
[2] *See Hutto*, 773 F.3d at 546.
[3] *See Oberg II*, 745 F.3d at 139.
[4] *See Hutto*, 773 F.3d at 546.

sue and be sued, and purchase and sell property[5]; (6) whether the entity has the power

to tax[6]; and (7) whether the entity is represented in legal matters by the state attorney

general[7].

The third *Ram Ditta* factor asks whether the entity is concerned with local and

non-state issues or with statewide issues. *See Oberg III*, 804 F.3d 646, 674. Further,

non-state concerns do not mean only local concerns, but rather also encompass other

non-state interests like out-of-state operations. *Id.* The services provided by the

entity, the purpose of the entity, and whether and what percentage of the revenue of

the entity is derived from in-state or out-of-state operations. *See id.* at 675.

Finally, the fourth *Ram Ditta* factor analyzes how the entity is treated by the

state itself legally. *See Oberg III*, 804 F.3d at 675. In addressing this factor, a court

may consider both the relevant state statutes, regulations, and constitutional

provisions which characterize the entity, and the holdings of state courts on the

question of immunity. *Id.* This review should be balanced as the question of whether

an entity is an alter ego of the state is a question of federal, not state, law, the manner

in which state law addresses the entity remains important, and potentially

controlling. *See Md. Stadium Auth.*, 407 F.3d at 264.

---

[5] *See Oberg II*, 745 F.3d at 139; *see also Hutto*, 773 F.3d at 546.
[6] *See Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 264 (4th Cir. 2005).
[7] *See Hutto*, 773 F.3d at 546.

### b.    District Court Analysis of TEDCO

The District Court issued the opinion which is the subject of this appeal on September 8, 2022. *See* JA40. The District Court therein reasoned that TEDCO was an "arm-of-the-state" after review of the *Ram Ditta* factors. *See* JA34 – 40. In review of the first *Ram Ditta* factor, the District Court explained that due to the statutes which governed TEDCO's creation and functions, the State of Maryland would not be *legally* liable for any judgment against it. *See* JA34 – 36. The District Court then turned its attention to whether the State of Maryland would be *functionally* liable for any judgment rendered against TEDCO. *Id*. In a little more than two paragraphs, the District Court reviewed three (3) factors it understood to be dispositive of functional liability under the first *Ram Ditta* factor:

(i)    TEDCO's annual reporting requirement to the Governor, the Maryland Economic Development Commission, and, in some instances, the General Assembly per Md. Code Ann., Econ. Dev. ("ED") § 10-415;

(ii)    The fact that TEDCO's budget originates from a grant from the State of Maryland per TEDCO's FY 2023 Budget;

(iii)    The ability of the State of Maryland to subject TEDCO to an audit at any time per ED § 10-414;

(iv)    The absence of an express provision granting TEDCO the power to acquire insurance or participate in any other entity's insurance program per ED § 10-408.

*Id*. The District Court reasoned that these factors indicated that, "…although Maryland is not legally liable for judgments against [TEDCO], the State is functionally liable as the budget-provider for [TEDCO]." JA34.

11

In review of the second *Ram Ditta* factor, the District Court agreed that TEDCO's corporate powers, including the ability to sue and be sued, indicated autonomy from the State of Maryland. *See* JA36 – 37. The District Court then analyzed a series of factors which it reasoned indicated a lack of autonomy from the State of Maryland, such as:

(i)     The requirement that TEDCO's Board of Directors be appointed by the Governor with advice and consent of the Senate, the President of the Senate, the Speaker of the House, and includes the Secretary of Commerce per ED § 10-403(b);

(ii)    The receipt of operational and investment funds from the State of Maryland per TEDCO's FY 2023 Budget;

(iii)   The ability of the Governor to remove members from the Board of Directors for incompetence, misconduct, or failure to perform the duties of the position per ED § 10-403(h)(2);

(iv)    The representation of TEDCO by the Office of the Attorney General per ED § 10-405(b)(1);

(v)     The absence of the power to tax per ED § 10-408.

*Id.* After its review, the District Court concluded that the second *Ram Ditta* factor weighed in favor of finding that TEDCO was an "arm-of-the-state". *See* JA37.

The District Court reviewed the third *Ram Ditta* factor and determined that TEDCO was primarily involved with statewide concerns due to the stated statutory purpose of TEDCO in ED § 10-402. *See* JA38. Additionally, the District Court reasoned that because the Governor must consider all geographic reasons of the State of Maryland when appointing members to the Board of Directors. *See id.*; *see also* ED § 10-403(e)(2).

The District Court finished its review of the fourth *Ram Ditta* factor opining that there was a dearth of case law and analysis of TEDCO's status as an "arm-of-the-state". *See* JA38. Notwithstanding this clear lack of analysis, the District Court recognized that the establishing statute of TEDCO considered the entity to be an "instrumentality of the state". *Id*. According to this statement in the statute, the District Court reasoned that the fourth *Ram Ditta* factor weighed in favor of finding "arm-of-the-state" status.

For the reasons discussed below, this analysis was flawed and a careful review of the *Ram Ditta* factors as applied to TEDCO would have revealed it to be a mere political subdivision of the State of Maryland and not an "arm-of-the-state".

c.    **Application of *Ram Ditta* to TEDCO**

(i)    **The First *Ram Ditta* Factor Does Not Support "Arm-of-the-state" Status**

As the District Court agreed that the State of Maryland could not be *legally* liable for a judgment against TEDCO, this analysis will only relate to the State of Maryland's *functional* liability. Should this Court reason that an analysis of the State of Maryland's *legal* liability is required, Ms. Singleton respectfully requests she be able to conduct that analysis in a supplemental brief.

In assessing functional liability for the purposes of Eleventh Amendment immunity of the State of Maryland because of judgment levied against TEDCO, it is important to determine whether the entity is so structured that, as a practical

13

matter, if the entity is to survive, a judgment must expend itself against state treasuries. *See Oberg II*, 745 F.3d at 137 (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 50 (1994)). To this end, it is required to understand how TEDCO is structured to determine if a judgment would call on the state treasury.

### 1.     Functional Liability and the Structure of TEDCO

TEDCO is the title of a state-created corporation which manages and administers different state-created funds and programs, including:

(1)     The Enterprise Fund per ED § 10-469;
(2)     The Inclusion Fund per ED § 10-482;
(3)     The Cybersecurity Investment Fund per ED § 10-464;
(4)     The Pre-Seed Builder Fund per ED § 10-486;
(5)     The Maryland Equity Investment Fund per ED § 10-487;
(6)     The Maryland Stem Cell Research Fund per ED § 10-434;
(7)     The Coordinating Emerging Nanobiotechnology Research in Maryland Fund per ED § 10-448;
(8)     The Equitech Growth Fund per ED § 10-488;
(9)     The Maryland Makerspace Initiative Fund per ED § 10-4C-05; and
(10)    The Maryland Innovation Initiative Fund per ED § 10-457.

These funds may receive appropriated funds from the State of Maryland and in some instances the State of Maryland is statutorily required to appropriate some money into specific funds. The money which constitutes these funds are held by the State Treasurer, the commanding majority of which are required by statute to be held in a separate and segregated account, and are accounted for by the State Comptroller. *See* ED § 10-4C-05(b)(2); *see also* ED § 10-457(f)(2); *see also* ED § 10-488(b)(4)(ii);

14

*see also* ED § 10-482(d)(2); *see also* ED § 10-434(d)(2); *see also* ED § 10-448(b)(2); *see also* ED § 10-464(f)(2).

Only the Enterprise Fund, the Pre-Seed Builder Fund, and the Maryland Equity Investment Fund are not required to be held separately by the State Treasurer. *See* ED § 10-469(d)(2); *see also* ED § 10-487(e)(2); *see also* ED § 10-486(e)(2). All of the funds are "manage[d] and supervise[d]" or "administer[ed]" by TEDCO and/or its personnel. *See* ED § 10-4C-05(d); *see also* ED § 10-457(c); *see also* ED § 10-488(b)(3); *see also* ED § 10-482(c); *see also* ED § 10-486(d); *see also* ED § 10-487(d); *see also* ED § 10-434(c); *see also* ED § 10-448(d); *see also* ED § 10-469(c); *see also* ED § 10-464(c).

Finally, by statute most of the funds', such as the Enterprise Fund, investment earnings shall be credited back to the funds and not the state treasury. *See* ED § 10-4C-05(g)(2); *see also* ED § 10-457(f)(4); *see also* ED § 10-482(g)(2); *see also* ED § 10-486(g)(2); *see also* ED § 10-434(g)(2); *see also* ED § 10-448(f)(2); *see also* ED § 10-469(f)(2); *see also* ED § 10-464(f)(4).

## 2.    Judgment Against TEDCO Will Not Affect The State Treasury

The District Court erroneously stretched the limits of functional liability under *Ram Ditta* to the breaking point by finding that because the operating budget was derived from state appropriations, the state treasury would be called upon to pay a judgment levied against TEDCO. *See* JA36. This erroneous ruling stems from the

15

District Court's belief that a judgment could *only* be paid from the operating budget. The District Court reached this finding after analysis of a few of the statutes related to TEDCO, after review of none of the regulations, and after cursor review of the FY 2023 Budget for TEDCO which it relied upon in forming its opinion. *See generally*, JA34 – 36. A review of the other statutes and regulations related to TEDCO reveals that the entity has substantial moneys to pay a judgment and has statutory authorization or lack of a statutory prohibition to do so.

The Enterprise Fund has been explicitly designated as a source to, "pay the administrative, **legal**, and actuarial expenses of [TEDCO]." ED § 10-469(b)(6) (emphasis added). Per the FY 2023 Budget, TEDCO has approximately $6,500,000.00[8] in the Enterprise Fund. *See* JA45. Accordingly, TEDCO is statutorily permitted and able to utilize money from the Enterprise Fund to pay for any judgment levied against it. Indeed, any effect on the Enterprise Fund will not result in an appropriation from the State of Maryland as the State of Maryland no longer provides appropriations for the Enterprise Fund. *See* JA48 ("The fiscal year 202 allowance does not include a special fund appropriation for the [Enterprise Fund]."). The FY 2023 Budget makes clear that there exists a "Reserve Fund" which is made up of money accumulated from various non-state sources. *See* JA47. Per the FY 2023

---

[8] Pursuant to the statute, the Enterprise Fund can receive an appropriation, however, it also presumably has substantial moneys itself as all investment earnings are credited back to the Fund and not the State of Maryland. *See* ED § 10-469(f)(2)

Budget, TEDCO has approximately $22,000,000.00 in its Reserve Fund, including non-cash assets. *Id*. Without any statutory controls on the use of the Reserve Fund, TEDCO could utilize these funds to pay any potential judgment levied against it. Indeed, TEDCO has used the Reserve Fund to pay for expenditures in the millions of dollars. *See* JA46 ("TEDCO spent $1.8 million of reserve funds to supplement its State-funded expenditures in fiscal 2021 and plans to use $1.7 million in fiscal 2022 and $2.0 million in fiscal 2023.").

The undeniable existence of these substantial moneys combined with the ability of TEDCO to use these moneys to pay a judgment levied against it indicates that the state treasury will not be affected. The District Court cited *Hutto v. S.C. Ret. Sys.* in its opinion to support the determination that the State of Maryland would be functionally liable for a judgment against TEDCO. *See* JA36. The *Hutto* Court analyzed the functional liability of South Carolina in relation to a class action lawsuit filed against the South Carolina Retirement System. *See Hutto*, 773 F.3d at 540. In reaching a determination that the South Carolina Retirement System was an "arm-of-the-state", the *Hutto* Court sharpened the focus of the functional liability inquiry articulating that, "the proper inquiry is not whether the state treasury would be liable in this case, but whether, hypothetically speaking, the state treasury would be subject to potential legal liability if the [state-created entity] did not have the money to cover the judgment." *Id.* at 545.

17

The *Oberg III* Court explained the meaning of this sharpened inquiry stating that, "[t]o the extent that [the state-created entity] suggests that *Hutto's* 'hypothetical' inquiry requires us to imagine not only a judgment that exceeds [state-created entity]'s revenues, but also that [state-created entity]'s accumulated cash and other assets have vanished, that proposition is not only an over-reading of *Hutto*, but also inconsistent with *Hess*, which considered real, not imaginary, financial information when rejecting arm-of-state status." *Oberg III*, 804 F.3d at fn. 15. The District Court in this matter has fallen prey to the exact over-reading cautioned by this Court, that is that the District Court has not considered the vast assets and substantial moneys available to TEDCO to pay a judgment against it and therefore not rely on some additional appropriation from the State of Maryland.

Beyond the issue that some of the operating budget originates from state appropriations, the District Court reasoned that the absence of an express statutory provision permitting TEDCO to acquire insurance indicated that TEDCO could not pay a judgment levied against it. *See* JA35 – 36. This issue is obviated by the fact that TEDCO has the substantial moneys identified above in both the Enterprise Fund and the Reserve Fund. The *Oberg* Courts did not consider the availability or express power to acquire insurance when analyzing the Eleventh Amendment immunity of the Pennsylvania Higher Education Assistance Agency ("PHEAA"). *See generally*, *Oberg II*, 745 F.3d at 138-139; *Oberg III*, 804 F.3d at 657-667. Importantly, the

*Oberg III* Court reasoned that, "…given [the state-created entity]'s control over its sizeable corporate wealth, there is little likelihood that a judgment against [the state-created entity], even one that exceeds its current revenues, would imperil its survival such that the Commonwealth would effectively be required to swoop in with financial support." 804 F.3d at 667. As such, the issue of insurance coverage and the lack of express authority to acquire insurance coverage should have no bearing on the analysis of whether a judgment against TEDCO would functionally be paid by the State of Maryland, especially considering the substantial moneys controlled by TEDCO.

As it relates to the District Court's cursory analysis of the State of Maryland's ability to audit TEDCO at any time and require it to annually report its budget, these are not issues which will serve to show that the State of Maryland would be either legally or functionally liable for a judgment levied against TEDCO for the reasons outlined above. As such, the District Court should have found that the first *Ram Ditta* factor weighed against finding that TEDCO was an "arm-of-the-state".

### (ii)    The Second *Ram Ditta* Factor Does Not Support "Arm-of-the-state" Status

In reviewing the second *Ram Ditta* factor, that being the degree of autonomy exercised by the entity from the state which created it, the District Court concluded that the factors weighed in favor of finding that TEDCO enjoys "arm-of-the-state" status. *See* JA36 – 37. However, the District Court's analysis was not properly guided

19

by the full gambit of factors historically reviewed by courts determining whether a state created entity is an "arm-of-the-state". Had the District Court reviewed the historical factors, the second *Ram Ditta* factor would weigh in favor of finding that TEDCO is not an "arm-of-the-state".

TEDCO is an autonomous entity in the State of Maryland. The entity is designed to manage and administer a series of funds with specific statutory purposes, and it is given great leeway to accomplish that mission. TEDCO itself is led by a nineteen (19) person Board of Directors. *See* ED § 10-403. One member of the Board of Directors is the Secretary of Commerce or the Secretary's designee. *Id.* at (b)(1). Fourteen (14) members of the Board of Directors are appointed by the Governor with the advice and consent of the Senate. *Id.* at (b)(2). Finally, two (2) members are appointed by the President of the Senate and another two (2) members are appointed by the Speaker of the House. *Id.* at (b)(3). The appointment of the Board of Directors by members of the State of Maryland's executive and legislative branches does suggest some level of state control, but appointment in this manner is not dispositive of state control. *See Oberg III*, 804 F.3d at 672. This is tempered by TEDCO's autonomous ability to select and hire its own Chief Executive Officer without any input from the State of Maryland. *See* ED § 10-404. Further, TEDCO may retain any necessary accountants, engineers, financial advisors, or other consultants without relying on state personnel procedures or appointments. *See* ED § 10-406. All of

20

TEDCO's employees are not considered state employees and are not subject to the provisions of the State Personnel Management System and TEDCO can thereby govern and manage its own employees without oversight from the State of Maryland. *See* ED § 10-407.

 TEDCO does receive certain appropriations in the form of a grant from the State of Maryland. *See* JA43. However, TEDCO does have its own substantial moneys in the Enterprise Fund and Reserve Fund which it could use to fund its operations. *See* ED § 10-469(b)(6); *see also* JA45, 47. TEDCO has received appropriations in the past for funding its operations, however, this Court should note that TEDCO is perfectly able to pay its own operating costs without intervention from the State of Maryland.

Analysis as to the origination of funds is a historical way to determine an entity's autonomy, as is analysis of who controls revenue. By statute, TEDCO itself appears to control its own revenue. Briefly, the General Funds, that being all funds aside from the Enterprise and Reserve Funds, have statutory contours for where money in the fund can be directed. *See* ED § 10-482(f); ED § 10-464(e); ED § 10-486(c); ED § 10-487(g); ED § 10-434(f); ED § 10-448(e); ED §§ 10-488(b)(2), (6); ED § 10-4C-05(e); ED § 10-457(e). However, the Legislature has granted TEDCO the ability to independently set its own criteria and regulations for objectives, eligibility, investment criteria, and other guidelines for investments related to the

General Funds and the Enterprise Fund. *See* ED § 10-408(a); *see also* ED § 10-409(b); *see also* COMAR 14.04.01.02, *et seq.*; *see also* COMAR 14.04.01.03, *et seq.*; *see also* COMAR 14.04.01.04, *et seq.*; *see also* COMAR 14.04.01.05, *et seq.*; *see also* COMAR 14.04.01.06, *et seq.*

Further, as reviewed previously, the majority of money directed to TEDCO is held in a segregated account and all of the funds are controlled by TEDCO and/or its personnel. *See supra* § I(c)(i)(1) at ¶ 2. Indeed, this Court has recognized that holding funds in a segregated account apart from general state funds does counsel against establishing "arm-of-the-state" status. *See Hutto*, 773 F.3d at 545. The control which TEDCO possesses by statute over its own revenue, the ability of TEDCO to procure revenue from other sources and generate it from its own investments, the discretionary use of money appropriated into the various funds, and the ability to use money in the Reserve and Enterprise Funds for its own purposes and reasons indicates that TEDCO, not the State of Maryland, controls its own revenue and indicates autonomy from the State of Maryland. *See Oberg III*, 804 F.3d at 668 ("[The state-created entity]'s control over its substantial, independently generated revenues thus establishes [the state-created entity]'s financial independence, which is a critical component of operational autonomy.")

Autonomy from the State of Maryland is further evidenced by the lack of any veto powers by the State. The District Court seemingly found that the Governor's

ability to remove an appointed member of TEDCO's Board of Directors for incompetence, misconduct, or failure to perform the duties of the position indicated that TEDCO was an "arm-of-the-state". *See* JA37; *see also* ED § 10-403(h)(2). This ability should not weigh on the second *Ram Ditta* factor testing a state's control over an entity as, "…the State may destroy or reshape any unit it creates….Yet cities and counties do not enjoy Eleventh Amendment immunity." *Hess*, 513 U.S. at 47. The Governor's ability to remove appointed members of the Board of Directors does not indicate control greater than that background level of control applied by the State of Maryland on its many political subdivisions which do not enjoy Eleventh Amendment immunity.

The lack of control by the State of Maryland is further evidenced by the many corporate powers granted to TEDCO upon its establishment which can be used without oversight. *See* ED § 10-408(b). The District Court correctly noted that these corporate powers indicated that TEDCO was not an "arm-of-the-state". *See* JA36 – 37. However, the District Court weighed TEDCO's lack of taxation power as strongly indicative of TEDCO's lack of autonomy. *See* JA37. The absence of the power to tax is logically consistent with the corporate powers granted to TEDCO, specifically that it should, "exercise power usually possessed by a private corporation in performing similar functions unless to do so would conflict with State law." ED § 10-408(b)(11). The power to tax is a relevant inquiry because, "[t]he

absence of the power to tax is a strong indication that an entity is more like an arm of the state than like a **county or city**…" *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 264 (4th Cir. 2005) (citation omitted). Where here, the Maryland Legislature created an entity akin to a private corporation, the power to tax would be logically absent as no private corporation has the power to tax. Further, TEDCO's ability to generate and raise its own revenues, as described herein throughout, like a private corporation is highly analogous to taxation. As such, the absence of taxation power should not be given great weight in the analysis of this particular and unique state-created entity.

Finally, TEDCO is traditionally represented by the Office of the Attorney General in litigation and an Assistant Attorney General serves as the general counsel for TEDCO. *See* ED § 10-405. Notwithstanding, TEDCO is not *required* to always rely on the Office of the Attorney General as with the approval of the Attorney General, TEDCO may retain additional necessary attorneys. *Id.* at (c).

Taken together, the indicia used to evaluate the second *Ram Ditta* factor indicates that TEDCO is an autonomous state-created entity. The lack of state controls on the administration of TEDCO, the expansive corporate powers granted to TEDCO, the substantive control that TEDCO has over appropriated and non-appropriated money, and the substantial moneys that TEDCO has which can be used to pay for operating costs suggests that TEDCO is not an "arm-of-the-state". Further,

indicia that the District Court found persuasive should be discounted as explained herein such as the absence of the power to tax and the ability of the Governor to remove appointed members of the Board of Directors. These indicia are "minor strings' that have little practical effect on TEDCO's independence and are not dissimilar from requirements imposed on other political subdivisions. *See Oberg III*, 804 F.3d at 672. As such, the District Court should have found that the second *Ram Ditta* factor weighed against finding that TEDCO was an "arm-of-the-state".

### (iii)    The Third *Ram Ditta* Factor Supports "Arm-of-the-state" Status

The District Court reasoned that TEDCO is primarily concerned with statewide as opposed to non-state concerns because its purpose includes, "…foster[ing] inclusive and diverse entrepreneurship and innovation throughout the State…" *See* JA38. Ms. Singleton agrees that the third *Ram Ditta* factor weighs in favor of TEDCO being an "arm-of-the-state". This agreement and finding is not dispositive of whether or not TEDCO is an "arm-of-the-state" for purposes of the Eleventh Amendment.

### (iv)    The Fourth *Ram Ditta* Factor Does Not Support "Arm-of-the-state" Status

The final factor under the *Ram Ditta* analysis is how the state-created entity is treated by the state itself legally. The District Court found that the fourth factor, "…weighs only slightly in favor of finding that [TEDCO] is an arm of the State."

25

JA38. In addressing this factor, a court may consider both the relevant state statutes, regulations, and constitutional provisions which characterize the entity and the holdings of state courts on the question. *Oberg II*, 745 F.3d at 138 (quoting *Md. Stadium Auth.*, 407 F.3d at 265). Ultimately, this is a question of federal law, but that federal question can be answered only after considering the provisions of state law that define the state-created entity's character. *See id.*

In reviewing this factor, the District Court recognized that TEDCO was established as an instrumentality of the state. *See* JA38. On this alone, the District Court found that this factor of the *Ram Ditta* analysis indicated "arm-of-the-state" status. *Id.* However, TEDCO is discussed in various places throughout the State of Maryland's legislative statutes and administrative regulations and this support should be considered for this analysis. The establishing and controlling statutes for TEDCO are enrolled under the Economic Development Article in Division II titled "Independent and Regional Development Units and Resources". *See generally*, ED §§ 10-401, *et seq.* Further, the regulations passed by TEDCO are enrolled in Title 14 of the Code of Maryland Regulations titled "Independent Agencies". *See generally*, COMAR 14.04.01.01, *et seq.* An executive order enrolled as COMAR 01.01.2020.05 identified TEDCO as a "quasi-governmental agenc[y]" and insinuates that the terms "body politic and corporate" in the establishing statute of TEDCO indicates independence from the State of Maryland. (C) and (C)(15)(a).

26

Aside from how TEDCO itself is construed, TEDCO's employees and personnel are not considered state employees for the purposes of benefits and the personnel management system. *See* JA43; *see also* ED § 10-407.

There is a dearth of statutes, regulations, and case law related to TEDCO. Cognizant of that, the statutes and regulations which are reviewed indicate that state law treats TEDCO as an independent "quasi-agency" not bound by certain laws of the State of Maryland affecting state employees. The fact that TEDCO's establishing statute declares it an "instrumentality of the state" is not dispositive of the fourth *Ram Ditta* factor. Not all instrumentalities of a state are entitled to Eleventh Amendment immunity, a distinction recognized by the Supreme Court. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("When deciding whether a state instrumentality may invoke the State's immunity, our cases have inquired into the relationship between the State and the entity in question."). As such, the District Court should have found that the fourth *Ram Ditta* factor weighed against finding that TEDCO was an "arm-of-the-state" or that review of the factor yields an inconclusive result.

### d. The *Ram Ditta* Factors, As Reviewed, Do Not Support "Arm-of-the-state" Status

After the careful review of the *Ram Ditta* factors conducted herein, it is apparent that the District Court erred in ruling that TEDCO was an "arm-of-the-state". On balance, the *Ram Ditta* factors indicate that TEDCO is an independent

public corporation with only a slice of state power. That slice of state power is not enough to immunize TEDCO from suit. *See Ram Ditta*, 822 F.2d at 457. Regarding the most important of the *Ram Ditta* factors, the treasury of the State of Maryland would not be functionally affected by a judgment against TEDCO pursuant to its ability to use the substantial moneys in the Enterprise[9] and Reserve Funds for discretionary purposes. Accordingly, the dismissal of Ms. Singleton's suit was in error and should be reversed and this matter remanded back to the District Court for further proceedings.

## VII.   Conclusion

For the forgoing reasons, the District Court's grant of dismissal should be reversed and Ms. Singleton's case should be remanded to the District Court for further proceedings. Ms. Singleton further requests any such other and further relief as this Honorable Court deems appropriate.

## VIII.  Request for Oral Argument

The undersigned counsel for Ms. Singleton respectfully submits that oral argument in this case would aid the Court in fairly deciding this case because of the inherent complex legal and factual issues in the application of legal issues that

---

[9] TEDCO is further explicitly permitted to use the money in the Enterprise Fund to pay for legal expenses. *See* ED § 10-469(b)(6).

present questions of first impression. Accordingly, the undersigned requests that the

Court grant the parties an oral argument for this matter.

Respectfully Submitted,

/s/ Philip B. Zipin
Philip B. Zipin
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue
Suite 400
Silver Spring, Maryland  20910
(301) 587-9373

*Counsel for Appellant*

**Certificate of Compliance**

1.      This brief complies with type-volume limits because, excluding the parts of
the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure
statement, table of contents, table of citations, statement regarding oral
argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*6,964*] words.

[    ] this brief uses a monospaced type and contains [*state the number of*]
lines of text.

2.      This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using
[*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[    ] this brief has been prepared in a monospaced typeface using [*state
name and version of word processing program*] with [*state number of
characters per inch and name of type style*].

Dated:  July 18, 2023                                   /s/ Philip B. Zipin
                                                        *Counsel for Appellant*

## Certificate of Filing and Service

I hereby certify that on this 18th day of July, 2023, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Hugh Scott Curtis
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND
10 East Baltimore Street
Baltimore, Maryland  21202
(410) 864-5313

Joshua Ryan Chazen
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
20th Floor
Baltimore, Maryland  21202
(410) 576-7058

*Counsel for Appellee*

/s/ Philip B. Zipin
*Counsel for Appellant*