**22-2075**

# United States Court of Appeals
*for the*
# Fourth Circuit

ANGELA SINGLETON,

*Plaintiff/Appellant,*

– v. –

MARYLAND TECHNOLOGY AND DEVELOPMENT CORPORATION,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND AT BALTIMORE

# REPLY BRIEF OF APPELLANT

PHILIP B. ZIPIN
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue
Suite 400
Silver Spring, Maryland 20910
(301) 587-9373

*Counsel for Appellant*

COUNSEL PRESS • VA – (804) 648-3664

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

I. Argument ........................................................................................1

a. Defendant-Appellee Over-Reads *Hutto* and Ignores the Existence of the Reserve Fund ..............................................1

b. TEDCO is Autonomous from the State of Maryland ...........................6

c. TEDCO Is Not Treated Like a State Agency......................................10

II. Conclusion ......................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Hess v. Port Auth. Trans-Hudson Corp.*,
513 U.S. 30 (1994)....................2, 8

*Hutto v. S.C. Ret. Sys.*,
773 F.3d 536 (4th Cir. 2014).................... 1, 2, 3

*Maryland Stadium Auth. v. Elerbe Becket Inc.*,
407 F.3d 255 (4th Cir. 2005)....................7

*Ram Ditta v. Maryland Nat'l Capital Park & Planning Com.*,
822 F.2d 456 (4th Cir. 1987)....................1, 4, 6, 11

*Regents of the Univ. of Cal. v. Doe*,
519 U.S. 425 (1997)....................6

*United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*,
804 F.3d 646 (4th Cir. 2015).................... 1, 5, 6, 7

**Statutes & Other Authorities:**

U.S. Const., Amend. XI .................... *passim*

24 P.S. § 5101....................6

COMAR 01.01.2020.05(C)....................10

COMAR 01.01.2020.05(C)(1) – (15) .................... 10-11

Md. Code Ann. § 5-301(d)(8) ....................11

Md. Code Ann. § 10-404....................7

Md. Code Ann. § 10-405(c) ....................8

Md. Code Ann. § 10-407....................10

Md. Code Ann. § 10-408....................4

Md. Code Ann. § 10-408(a) ....................9

Md. Code Ann. § 10-408(b)(1) – (12) ....................9

Md. Code Ann. § 10-415....................6

Md. Code Ann. § 10-469 ....................5
Md. Code Ann. § 10-469(b) ....................3
Md. Code Ann. § 10-469(d)(2) ....................3
Md. Code Ann. § 12-101(a)(2)(vi) ....................10

# I. Argument

## a. Defendant-Appellee Over-Reads *Hutto* and Ignores the Existence of the Reserve Fund

Defendant-Appellee focuses its argument as to the first *Ram Ditta*[1] factor – that being the legal or functional liability of the State of Maryland's treasury to pay a judgment – on the exact over-reading of *Hutto*[2] that this Court cautioned against. *See United States ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 804 F.3d 646, fn. 15 (4th Cir. 2015) ("*Oberg III*"). Specifically, Defendant-Appellee argues that this Court should envision a scenario where TEDCO suffers a judgment which not only exceeds its revenues, but that the vast wealth and substantial moneys accumulated by TEDCO have evaporated. *Compare* Appellee Br. 12 ("[I]f the expenditures of TEDCO exceed receipts, Maryland retains the obligation to bear and pay the resulting indebtedness.") *with United States ex rel. Oberg III*, 804 F.3d at fn. 15 ("To the extent that [the state-created entity] suggests that *Hutto*'s 'hypothetical' inquiry requires us to imagine not only a judgment that exceeds [the state-created entity]'s revenues, but also that [the state-created entity]'s accumulated cash and other assets have vanished, that proposition is not only an over-reading of *Hutto*, but

---

[1] *Ram Ditta v. Maryland Nat'l Capital Park & Planning Com.*, 822 F.2d 456 (4th Cir. 1987).

[2] *Hutto v. S.C. Ret. Sys.*, 773 F.3d 536 (4th Cir. 2014).

also inconsistent with *Hess*, which considered real, not imaginary, financial information when rejecting arm-of-the-state status.").

Further, Defendant-Appellee contends that, "[i]n this regard, there is no difference between the South Carolina retirement system and TEDCO…", however, this analysis is incorrect from both a legal, as explained above, and factual perspective. Appellee Br. 11. Factually, the South Carolina retirement system in *Hutto* had a different statutory setting such that, as the South Carolina Supreme Court found, "should the Board determine that any retirement system is not funded on a sound actuarial basis, the General Assembly *must* provide funding necessary to restore the fiscal integrity of the System." *Hutto*, 773 F.3d at 544 (emphasis added). The State of Maryland has imposed no such mandatory funding requirement upon TEDCO, except the funding requirements included by statute relevant to specific funds. To state that the South Carolina retirement system and TEDCO are so similar that there is "no difference" between them is incorrect.

Notwithstanding Defendant-Appellee's clear over-reading of *Hutto*'s logic, Defendant-Appellee fails to contend with the existence of the Reserve Fund in any way whatsoever. Instead, Defendant-Appellee focuses solely on the Enterprise Fund stating that this single fund cannot dislodge functional liability because of, "…all [of the] substantial control evidence…" Appellee Br. 11. This is despite the fact that the

Enterprise Fund constitutes approximately $6,500,000.00. *See* JA45. As it relates to the "substantial control evidence", Defendant-Appellee chiefly cites[3]:

(i) Its over-reading of *Hutto*;
(ii) That the State of Maryland *can* provide funds to the Enterprise Fund;
(iii) The lack of an explicit mandate to pay legal expenses in Md. Code Ann., Econ. Dev. ("ED") § 10-469(b);
(iv) The fact that the Treasurer holds the Enterprise Fund and the Comptroller accounts for it per ED § 10-469(d)(2);
(v) That the operating budget for TEDCO comes mostly from the State of Maryland; and
(vi) The lack of a statutory ability to acquire insurance.

*See* Appellee Br. 11 – 12.

In dealing with these in turn, aside from the over-reading already addressed, the fact that the State of Maryland *can* provide funds to the Enterprise Fund does not indicate "substantial control" but merely an ability of the State of Maryland to provide funding. Indeed, the State of Maryland no longer provides appropriations for the Enterprise Fund. *See* JA48 ("The fiscal year 2022 allowance does not include a special fund appropriation for the [Enterprise Fund]."). Further, the lack of an explicit mandate in ED § 10-469(b) requiring TEDCO to pay legal expenses from the Enterprise Fund is not required for avoiding functional liability. TEDCO has the

[3] Two factors cited by Defendant-Appellee are not dealt with above due to their spuriousness: (1) that "[t]he State exercises control and dominion over TEDCO"; and (2) that "…any judgment that depletes funds provided by the State for particular state purposes infringes directly on sovereign interests…implicating the Eleventh Amendment." Both factors are without support legally and factually and have not been used in past precedent to determine "arm-of-the-state" status for purposes of Eleventh Amendment immunity.

clear ability to pay legal expenses pursuant to the statute and that ability is enough for it to avoid placing the State of Maryland in the position of expending taxpayer money from its treasury to pay a judgment against it. As such, the State of Maryland would not be functionally liable for a judgement and thereby the Eleventh Amendment is not implicated.

Two of the factors cited by Defendant-Appellee lack relevance as to the State's liability to pay a legal judgment according to the *Ram Ditta* analysis. These factors are the Treasurer's and Comptroller's role in the Enterprise Fund and the legislative origin of some of the operating budget for TEDCO. *See* Appellee Br. 11 – 12. These factors do not have any bearing on TEDCO's ability to pay a judgment from its own substantial accumulated money or the potential liability of the state treasury and should therefore not be considered in the first *Ram Ditta* factor analysis. Finally, Defendant-Appellee, citing 10-408, focuses on the lack of the explicit power of TEDCO to acquire insurance as an additional factor supporting its reasoning that the State of Maryland would be liable for a judgment against TEDCO. Not only does 10-408 implicitly allow for the acquisition of insurance inasmuch as 10-408 grants TEDCO the ability "to enter into contracts and other legal instruments", inclusive of insurance, the lack of insurance does not preclude TEDCO from being able to pay a judgment out of its own funds without resorting to State funding because TEDCO

has substantial moneys to pay a judgment against it in both its Reserve Fund and Enterprise Fund.

In full analysis, the "substantial evidence of control" purported to exist by Defendant-Appellee is a mirage conjured to distort the economic and fiscal reality that TEDCO has substantial moneys to pay a judgment such that the State of Maryland's treasury would not be implicated. Defendant-Appellee has ignored the existence of the Reserve Fund, which is made up of $22,000,000.00 in both cash and non-cash assets. *See* JA47; *see also* Appellee Br. 11. There is no explicit statutory authority controlling the Reserve Fund, which indicates that income can be collected by TEDCO and used without restriction, including to satisfy a legal judgment and reimburse the Enterprise Fund, if desired. Even without the Reserve Fund, the Enterprise Fund has its own portion of substantial moneys which it is statutorily permitted to use to pay legal expenses. *See* ED § 10-469. Similar to the Pennsylvania Higher Education Assistance Authority ("PHEAA") in *Oberg III*, TEDCO has tens of millions of dollars in net revenue which it is allowed to accumulate over several years and TEDCO has substantial control over its substantial corporate wealth. Appellant Br. 16 – 18. As such, there is little likelihood that a judgment against TEDCO, even one that exceeds its current revenues, would imperil its survival such that the State of Maryland would effectively be required to swoop in with financial support. *See Oberg III*, 804 F.3d at 667.

Therefore, the District Court should have found that the first *Ram Ditta* factor weighed against finding that TEDCO was an arm-of-the-state.

**b. TEDCO is Autonomous from the State of Maryland**

In its analysis, Defendant-Appellee notes that, "…the Legislature indisputably established TEDCO as an instrumentality of the State, codifying legislative intent." Appellee Br. 13. This is not dispositive in the slightest as PHEAA in *Oberg III* was also an instrumentality of the state. *See* 24 P.S. § 5101 ("There is hereby created a body corporate and politic constituting a public corporation and government instrumentality which shall be known as the 'Pennsylvania Higher Education Assistance Agency'."). Further, not all instrumentalities of a state are entitled to Eleventh Amendment immunity, a distinction recognized by the Supreme Court. *See Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997) ("When deciding whether a state instrumentality may invoke the State's immunity, our cases have inquired into the relationship between the State and the entity in question.").

Next, Defendant-Appellee contends that, "…the State retained control and ownership over the operations of TEDCO." Appellee Br. 13 (citing ED § 10-415). The terms "ownership and control" do not appear conjunctively or individually in ED § 10-415. Further, that portion of the Maryland Code only deals with TEDCO's reporting requirements of its operations, it has nothing to do with any ability by the Legislature to control the conduct of TEDCO's operations. *See* ED § 10-415. These

reporting requirements have been described by this Court as "minor strings" of state control that have little practical effect on a state-created entity's independence. *See Oberg III*, 804 F.3d at 672.

Defendant-Appellee likens the case *sub judice* to *Maryland Stadium Auth. v. Elerbe Becket Inc.*[4], however, reliance on that case is misplaced. Initially, not *all* of TEDCO's decisionmakers are appointees as the Chief Executive Officer is selected by the Board itself without any input from the State of Maryland. *See* ED § 10-404. Further, simply because the Board of Directors for TEDCO is filled with state appointees, that is not dispositive on its own. *See Oberg III*, 804 F.3d at 672 – 673 ("The arm-of-the-state inquiry…does not turn on whether the entity is subject to any amount of state regulation at all, or whether it is subject to more regulation than a private business, but whether the entity functions independently of the state despite the state regulation to which it is subject."). Indeed, notwithstanding the fact that all of the Board members of PHEAA were state appointees, this Court found that autonomy factor weighed against finding arm-of-the-state status. *Id.* at 673. What matters for the arm-of-the-state analysis is state control over the substance of the operations of TEDCO and its funding and the record shows that these areas are controlled by TEDCO and not the State of Maryland. *See* Appellant Br. 21 – 22.

---

[4] 407 F.3d 255 (4th Cir. 2005).

Defendant-Appellee describes the power of the Governor to remove appointed members of the Board of TEDCO as significant in analyzing whether TEDCO has autonomy from the State of Maryland. *See* Appellee Br. 15. However, the Governor's ability to remove appointed members of the Board of TEDCO does not indicate control greater than that background level of control applied by the State of Maryland on its many political subdivisions which do not enjoy Eleventh Amendment immunity. *See Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 47 (1994) ("…the State may destroy or reshape any unit it creates…Yet cities and counties do not enjoy Eleventh Amendment immunity."). Defendant-Appellee has offered no argument as to how the ability of the Governor in this regard indicates state control over the substance of the operations of TEDCO.

In its final points challenging TEDCO's autonomous nature, Defendant-Appellee asserts that its receipt of representation from the Maryland Office of the Attorney General, receiving some appropriations from the State of Maryland, and TEDCO's lack of an ability to tax indicate that it is not autonomous from the State of Maryland. In addressing these in turn, TEDCO is not *required* to be represented by the Maryland Office of the Attorney General and may opt to acquire outside counsel with the permission of the Office. *See* ED § 10-405(c). As to the ability to tax, TEDCO is permitted to raise funds through its vast array of corporate powers which, though fundamentally different from the governmental power of taxation,

provides a similar function to the power of taxation: raising revenue. *See* ED § 10-408(b)(1) – (12). As to the issue of appropriations received from the State of Maryland, TEDCO is partially self-funding and only receives appropriations for certain funds and its operating budget. TEDCO receives no appropriation for the Reserve Fund, which is solely the accumulated wealth of TEDCO, and did not receive an appropriation for the Enterprise Fund in 2022. *See* JA48 ("The fiscal year 2022 allowance does not include a special fund appropriation for the [Enterprise Fund].").

At bottom, Defendant-Appellant points to areas of the State of Maryland's involvement in TEDCO which do not indicate substantive state control, but rather show its involvement with the entity as one of its many political subdivisions. The State of Maryland established and launched TEDCO as a state-created corporation, but not as an arm-of-the-state, to do business and support businesses in Maryland. Rather than establish "control and ownership" of TEDCO, TEDCO was created to draft its own regulations related to investments, pass its own bylaws and operating procedures, and do business as would any other business in the State of Maryland. *See* ED §§ 10-408(a), (b)(1) – (12). These "minor strings" of state control are not sufficient to intrude on TEDCO's exercise of substantive discretion in its own operations, rather the factors brought to light by Defendant-Appellant operate predominantly at the administrative edges rather than the discretionary heart of

TEDCO's authority. The Defendant fails to show that the State has any substantive veto power—neither statutorily or in practice. As such, TEDCO is sufficiently autonomous from the State of Maryland to warrant a finding that it is not an arm-of-the-state and the District Court's contrary finding was in error.

**c. TEDCO Is Not Treated Like a State Agency**

As discussed, the simple designation of TEDCO as a "state instrumentality" is not dispositive as to the issue of how TEDCO is treated by the State of Maryland. *See supra.* at 5. Defendant-Appellee next points to the Maryland Tort Claims Act ("MTCA") as an indicator that TEDCO is a state agency. *See* Appellee Br. 16. Specifically, the MTCA considers employees and officials to be "state personnel". *See* Md. Code Ann., State Gov't § 12-101(a)(2)(vi). This fact should be tempered by the explicit exclusion of TEDCO's employees and personnel from the benefits and personnel management systems which most, if not all, Maryland state agencies are covered by. *See* JA43; *see also* ED § 10-407.

Additionally, COMAR 01.01.2020.05 sheds light on how the Governor of Maryland views TEDCO. Therein, the Governor, via executive order, establishes a commission to review and investigate the operations and structures of several quasi-governmental agencies. *See* COMAR 01.01.2020.05(C). In total, fourteen (14) quasi-governmental agencies are identified, and a fifteenth catch-all definition is used as an equivalent to the fourteen (14) quasi-governmental agencies. COMAR

01.01.2020.05(C)(1)-(15). TEDCO is one of the listed quasi-governmental state agencies. *Id.* at (C)(11). Additionally, the Northeast Maryland Waste Disposal Authority ("NMWDA") is considered a quasi-governmental state agency. *Id.* at (C)(12). The NWMDA is defined as a "local government" pursuant to the Local Government Tort Claims Act ("LGTCA"). *See* Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(8). The place of the NWMDA in the LGTCA would suggest that it is a political subdivision of the State of Maryland as opposed to an arm-of-the-state entitled to Eleventh Amendment immunity. Notwithstanding, the NWMDA is equated to TEDCO as a quasi-governmental agency by the Governor of Maryland.[5]

Defendant-Appellee relies on only these two (2) factors to support a finding that TEDCO should be considered an arm-of-the-state. *See* Appellee Br. 16. These threadbare arguments are not and should not allow TEDCO to be considered an arm-of-the-state. Indeed, at best, the fourth *Ram Ditta* factor should be found to be inconclusive based on these arguments.

[5] The investigation into the other twelve (12) quasi-governmental agencies is frustrated by a lack of case law on those quasi-governmental agencies' potential Eleventh Amendment immunity. Most of the quasi-governmental agencies have not had their immunity tested. Appellant suggests that the Bainbridge Development Corporation and Canal Place Preservation and Development Authority are two (2) other quasi-governmental agencies which are closer to political subdivisions than arms-of-the-state.

## II. Conclusion

For the forgoing reasons, the District Court's grant of dismissal should be reversed, and Ms. Singleton's case should be remanded to the District Court for further proceedings. Ms. Singleton further requests any such other and further relief as this Honorable Court deems appropriate.

Respectfully submitted,

/s/ Philip B. Zipin
Philip B. Zipin
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue
Suite 400
Silver Spring, Maryland 20910
(301) 587-9373

*Counsel for Appellant*

**Certificate of Compliance**

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

   [ X ] this brief contains [*state the number of*] words.

   [ ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

   [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

   [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: September 7, 2023

/s/ Philip B. Zipin
*Counsel for Appellant*

**Certificate of Filing and Service**

I hereby certify that on this 7th day of September, 2023, I caused this Reply Brief of Appellant to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Hugh Scott Curtis
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND
10 East Baltimore Street
Baltimore, Maryland 21202
(410) 864-5313

Joshua Ryan Chazen
OFFICE OF THE ATTORNEY GENERAL OF MARYLAND
200 St. Paul Place
20th Floor
Baltimore, Maryland 21202
(410) 576-7058

*Counsel for Appellee*

/s/ Philip B. Zipin
*Counsel for Appellant*